**In re Roger Harold SCHOENFELD, Debtor.**

**J. Kevin CHECKETT, Trustee, in Bankruptcy, Plaintiff,**

v.

**Roger P. SCHOENFELD, Defendant.**

**Bankruptcy No. 88–03290–SW–7.**

**Adv. No. 89–3031–SW–7.**

United States Bankruptcy Court, W.D. Missouri.

March 19, 1990.

■ ■ ■

J. Kevin Checkett, Carthage, Mo., for trustee.

Paul Taylor, Webb City, Mo., for debtor.

Barry Langford, Joplin, Mo., for defendant.

## ORDER FINDING THAT DEFENDANT DOES NOT HOLD A PERFECTED SECURITY INTEREST, AND REQUIRING TURNOVER

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff bankruptcy trustee filed this action seeking a determination that defendant does not hold a perfected security interest in certain assets of the debtor. The Court finds for the Plaintiff. On January 14, 1987, the debtor, Dr. Roger Harold Schoenfeld, borrowed $4,000.00 from his father, defendant, Roger P. Schoenfeld. In exchange, the debtor signed a promissory note as well as a security agreement granting defendant a security interest in the debtor's gun collection. The determination of the perfection of the security interest in this case is complicated by the fact that the city of Joplin, Missouri, is located within two counties—Jasper County and Newton County. The father attempted to perfect such security interest by filing UCC–1 financing statements with the Secretary of State and with the Recorder of Deeds of Jasper County, Missouri. The UCC–1 filed by the father lists an address for the debtor which was his office in Newton County, Missouri. The security agreement states that the guns will be kept at such address.

■ The Trustee contends that the UCC–1 filings were not sufficient to perfect the lien. Missouri law provides for the perfection of security interests in consumer goods by the filing of a financing statement "... in the office of the Recorder of Deeds in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the Recorder of Deeds in the county where the goods are kept ..." (R.S.Mo. § 400.9–401(1)(a)). In his response, the father contends that his son was a resident of Jasper County on the date the financing statement was filed and that, therefore, the lien was validly perfected. While not referred to in his answer, the father at trial also offered evidence to show, in the alternative, that the lien was perfected by possession as to a substantial number—and apparently the most valuable—of the guns.* Missouri law provides that a secured party can perfect a security interest in goods by possession. R.S.Mo. § 400.9–305 reads in part as follows:

"A security interest in letters of credit and advices of credit (subsection (2)(a) of section 400.5–116), goods, instruments, money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. ... A security interest is perfected by possession from the time possession is taken without relation back and contin-

---

* The guns upon which the defendant claims a perfected lien by possession are as follows:

16 ga Winchester shotgun pump Mdl 12 SW 1881397
10 ga Iwtw firearms matador Mdl DBBL SW 155747
16 ga Ithica shotgun pump Mdl 37 SW 37719
12 ga Browning 3 in MAG Auto Mdl V SW 93345
.22 cal Browning Rifle Auto Grade I SW 142147707
.22 cal Browning Rifle Auto Grade I (Before serial #)
.30–06 cal Remington Rifle Auto Grade I SW 176307
300 cal Weatherby Rifle Bolt RH–26 SW 60595
.44 cal Black powder Rifle Italy Primitive SW 0950
.357 cal Smith & Wesson Pistol Mdl 19 SW 894055
.38 cal S & W Pistol Mdl 60 SW R158659
9 mm S & W Pistol Mdl 38 SW SNA1467
.44 cal Ruger Pistol BL.PO. SW 14012259
.357 cal S & W Pistol Mdl 19 SW 7K92429
.377 cal S & W Pistol Mdl 28 SW 290395
9 mm Browning Pistol Mdl HP SW 245pz66048
.44 cal S & W Pistol Mdl 29 SW W816659
.357 cal S & W Pistol Mdl 19 SW 8K35326
.38 cal S & W Pistol Mdl 60 SW R316049

ues only so long as possession is retained, unless otherwise specified in this article. The security interest may be otherwise perfected as provided in this article before or after the period of possession by the secured party."

The evidence at trial showed that on January 14, 1987, the debtor did own a house in Jasper County, Missouri. However, the evidence showed that in September of 1986, he had moved his furniture and other personal belongings to Miami, Oklahoma, to the house of Kay Francis Walker, whom he married on January 10, 1987. A child of he and Ms. Walker, born on January 24, 1987, was issued a birth certificate stating both parents to be residents of Miami, Oklahoma. Ms. Walker testified that such certificate was based on information provided by Dr. Schoenfeld. The debtor and Ms. Walker remained married until September 25, 1987. During the period immediately before and after the grant of the security interest to the defendant, Ms. Walker testified that the debtor either stayed at her house or, on evenings when he worked late, at his office, which is located in Joplin, Newton County, Missouri. In fact, she testified that after August, 1986 there was no bed or other furniture at the Jasper County home. The debtor himself testified that at various other times he lived at his office and that accommodations were available at such office. On February 3 or 4, 1987, the debtor and Ms. Walker purchased a residence in Newton County, Missouri using the $4,000 lent from the debtor's father as the down payment.

The debtor agrees that almost all his household goods were moved to Oklahoma in August or September, 1986 but contends that he kept a pallet and some changes of clothes at the Jasper County address for when he worked late or had a disagreement with his new wife. He acknowledges that water service to the Jasper County home was turned off prior to January, 1987, but says that electrical service was maintained. However, as the trustee points out, the amount of electricity actually used in late 1986 and early 1987 is nowhere near that which would be used if the house had been occupied.

From the evidence, it is obvious that the debtor did not reside in Jasper County, on January 14, 1987. He either lived in Newton County or, more likely, in Oklahoma. If in Newton County, the UCC–1 should have been filed there, but was not. If in Oklahoma, the UCC–1 should have been filed in the county in which the goods were kept as of the date the security interest was granted.

The question of where the goods were kept is also related to the father's claim of a possessory lien. At trial, both the debtor and his father testified that certain of the guns were kept in the father's possession. The debtor testified that he kept them there because his father had a safe at his house in which the guns could be stored, and also that he kept them there because he periodically went hunting on his father's farm. His father testified that the guns were brought to him "as part of the loan process" in order to prepare the list attached to the financing statement. (Tr. 44) The father's residence is in St. Louis, Missouri, and his farm is near St. Louis, in Owensville. Neither is located in Jasper County, Missouri. Therefore, at least as to the guns in the father's possession, the financing statement was not properly filed in the county where such guns were kept, and the lien granted to him in these guns was not perfected.

That leaves two questions. Does the father have a possessory lien on the guns held by him? And did the father's UCC filing in Jasper county perfect a lien on the guns not in his possession—that is, were those guns kept in Jasper County?

██ As to the claimed possessory lien, such lien did not exist. The purpose of the perfection requirement is to give notice to all current and potential creditors that the property is being used as collateral and cannot be repledged. See *In re Copeland*, 531 F.2d 1195 (3rd Cir.1976). The mere fact that one person holds property of another does not create a lien. *Copeland* noted that if the debtor or "an individual closely associated" with him holds the collateral this would not sufficiently alert pro-

spective creditors that the debtor's property is encumbered. See, *In re Rolain*, 823 F.2d 198 (8th Cir.1987). Here, the property was certainly held by someone close to the debtor—his father. No one testified that the guns were given to the father for the purpose of perfecting a lien. In fact, the parties intended to perfect the lien by the UCC filing. The debtor gave the guns to his father for safekeeping or convenience, and had free and unfettered access to such guns while in his father's possession. When the debtor wanted to go hunting, he went to his father's house and got a gun. In fact, the father testified that by August, 15, 1989 he had only seven of the guns in his possession; the rest had been taken back by the debtor for his own use. The debtor himself testified that most of the guns remained in his father's possession only until he moved into the Newton County residence in August 1987 (Tr. 68). Any perfected lien the father may have had was erased when the debtor took a gun back. But it cannot be argued that any such possessory lien ever existed, since the father did not exercise dominion and control over such guns as against the debtor.

 The final issue is whether the father perfected a lien on any of the other guns, not in his possession, by the UCC filing in Jasper County.** That issue turns on where the goods were kept as of January 14, 1987, assuming the debtor lived in Oklahoma as of that date. The debtor testified that he kept some of such guns at his office, in Newton County, some in his cars, and some at the house in Jasper County. (Tr. 69) His ex-wife testified that guns were moved to Oklahoma along with his other possessions in 1986. (Tr. 25) His father said he saw certain guns at the Jasper County residence at one time (Tr. 38), but did not testify that he had even been in such residence after 1986. A former employee of the debtor testified that the debtor kept some guns in his car. (Tr. 6) No witness testified as to which guns in particular were stored in Jasper County, the car, the office, or Oklahoma. In defense of a turnover action, a party attempting to prove that it has a perfected lien on assets of the debtor must prove each and every element necessary to perfect such a lien. See, *In re Pester*, 845 F.2d 1476, 1486 (8th Cir.1988). While the defendant did prove that the financing statement was filed in Jasper County on January 14, 1987, he has failed to prove which particular guns were kept in such county on that date. In fact, the evidence demonstrated that most of the guns were kept elsewhere as of that date.

Based upon the above and foregoing, the Court finds that any security interest held by the defendant is not perfected and that the guns referred to herein must be turned over to the Trustee within 10 days of the date of this Order. This Order is not intended to restrict the debtor's ability to claim lawful exemptions as to the guns which are to be turned over to the Trustee.

---

** The guns upon which the father did not claim a possessory lien:

16 ga Wards Westerfield Mdl 52 SW 51311–TA
.30–30 cal Marlin Rifle Lever Mdl SSt336 SW
.30–30 cal Marlin Rifle Lever Mdl 336C SW 25052074
.375 HH Winchester Rifle Bolt Mdl 70 SW 6716815
.458 Win. Remington Rifle Bolt Mdl Safari SW
50 cal Black powder Rifle CVA Primitive SW 0028844
.38 cal S & W Pistol Mdl 36 SW J224685
.22 Mag S & W Pistol Mdl K22 SW 82K4826
.38 cal Tanarmi Pistol Mdl D.R. SW 06799
.22 cal R.G. Pistol Mdl 23 SW 149604
.45 cal Colt Pistol Mdl Comm SW 70BS41944
.22 cal W.Am. Arms Pistol Mdl Mag SWD21244
.27 cal Jennings Pistol Mdl Auto SW 082021
.38 cal S & W Pistol Mdl 10 SW 6064257